WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| McClure Enterprises, Inc., | No. CV 05-3491-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| General Insurance Company of America, | |
| Defendant. | |

Pending before the Court is Plaintiff McClure Enterprises, Inc.'s ("McClure") First Motion for Partial Summary Judgment Re: Liability for Fraud and Racketeering. (Dkt. 18)  Also pending is Defendant General Insurance Company of America's ("GICA") Cross-Motion for Summary Judgment on Plaintiff's Complaint. (Dkt. 23)

**BACKGROUND**

**A. Statement of Facts**

In May of 1990, the City of Phoenix issued Invitation for Bid ("IFB") No. 90-337, which invited private towing companies to submit sealed bids for contracts to provide towing services for the six precincts into which the city is divided.[1]  McClure contends that Wayne

---

[1]An IFB is one method of procuring services or supplies for public agencies. Arizona Revised Statutes Annotated ("A.R.S.") § 41-2533 (2007); Arizona Administrative Code ("A.A.C.") R2-7-B301 to R2-7-B316.  A contract awarded under an IFB must be issued to the "lowest responsible and responsive bidder" whose bid meets the requirements and evaluation criteria set forth in the IFB. A.R.S. § 41-2533(G); A.A.C. R2-7-B314.

Francisco("Francisco"), owner and controller of DMC Industries, dba Statewide Towing ("Statewide"), Louis Jandro ("Jandro"), Francisco's insurance agent, and Farmer's Insurance ("Farmers") should be found liable for fraud and racketeering in connection with the winning bid Statewide submitted for Precincts 6 and 9 of the City of Phoenix. McClure, which provided the second lowest bid for Precincts 6 and 9, claims that it would have received the contracts but for the fraudulent scheme of Francisco, Jandro and Farmers. According to McClure, Francisco avoided paying worker's compensation and liability insurance premiums for his drivers, which were required under IFB No. 90-337, by employing them as independent contractors. McClure alleges that Francisco, with the assistance of Jandro and Farmers, concealed Statewide's use of independent contractors by filing fraudulent insurance certificates with the City. McClure argues that the economic advantage created by this fraudulent scheme enabled Statewide to submit the lowest bid and deprived him of the contracts.

GICA disputes McClure's contention that the bids for Precincts 6 and 9 were obtained via a fraudulent scheme. According to GICA, Statewide complied with IFB 90-337 and McClure's interpretation, particularly with regard to the requirements set forth in §1.7 and 2.10 of IFB 90-337, is incorrect.

**B. Procedural History**

The matter now before the Court is the result of a settlement agreement reached between the parties in a legal malpractice action, *McClure Enterprises, Inc. V. General Insurance Company of America*, CV-02-1107-PHX-FJM. In that action, McClure accused his former attorney, William Downey, of malpractice for his representation in a lawsuit against Francisco, DMC Industries, Inc. and related entities. McClure's earlier lawsuit against Francisco arose from the same set of facts as the instant action: McClure alleged that it was deprived of the towing contracts for Precincts 6 and 9 due to fraudulent bids submitted by Francisco. McClure claims that Downey advised them to settle for an amount far below the true value of the lawsuit because he was having financial problems and needed the contingent fee. After GICA, Downey's insurer, denied coverage for the legal malpractice

1  claim, McClure and Downey entered into a Damron agreement providing for the entry of a
2  $5,000,000 judgment against Downey in exchange for McClure's release and covenant not
3  to execute the judgment against him.  McClure subsequently filed a lawsuit against GICA
4  to contest the coverage issue, which was resolved in part by GICA agreeing: (1) to accept
5  coverage of Downey at the time the alleged malpractice occurred, (2) to be named as a party
6  in this action, and (3) to defend the legal malpractice claim McClure has against Downey.
7  McClure's legal malpractice claim against Downey is the subject of this lawsuit.

8        The instant motion for partial summary judgment is, according to McClure, the first
9  in a series of motions for partial summary judgment.  McClure asserts that no genuine dispute
10 of fact or law exists about whether Francisco, Jandro and Farmers Insurance defrauded the
11 City of Phoenix in obtaining the tow contracts for Precincts 6 and 9, which were awarded
12 pursuant to IFB 90-337.  GICA filed a Response and Cross-Motion for Summary Judgment
13 on February 7, 2007.  Both parties have since filed their respective replies and the matter is
14 now fully briefed.

15 **STANDARD OF REVIEW**

16       A court must grant summary judgment if the pleadings and supporting documents,
17 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
18 issue as to any material fact and that the moving party is entitled to judgment as a matter of
19 law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
20 Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive
21 law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248
22 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the
23 outcome of the suit under the governing law will properly preclude the entry of summary
24 judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the
25 evidence must be "such that a reasonable jury could return a verdict for the nonmoving
26 party."  Id.; see Jesinger, 24 F.3d at 1130.

27       A principal purpose of summary judgment is "to isolate and dispose of factually
28 unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

1   against a party who "fails to make a showing sufficient to establish the existence of an
2   element essential to that party's case, and on which that party will bear the burden of proof
3   at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
4   1994). The moving party need not disprove matters on which the opponent has the burden
5   of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment
6   need not produce evidence "in a form that would be admissible at trial in order to avoid
7   summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere
8   allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing
9   that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co.,
10  Ltd. v.Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint
11  Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

**I.   McClure Enterprises' First Motion for Partial Summary Judgment Re: Liability for Fraud and Racketeering**

McClure asserts that no genuine dispute of fact or law exists about whether Francisco, Jandro and Farmers defrauded the City of Phoenix by intentionally omitting necessary information in the bid they submitted to win the tow contracts for Precincts 6 and 9, which were awarded pursuant to IFB 90-337. McClure claims that Francisco, Jandro and Farmers intentionally and fraudulently evaded the requirements of IFB 90-337 in three respects. First, Francisco, with the assistance of Jandro and Farmers, concealed Statewide's use of independent contractors by filing fraudulent insurance certificates with the City. Second, Francisco, again acting with the assistance of Jandro and Farmers, did not comply with Arizona's Worker's Compensation insurance regulations; and third, Francisco, once again acting in concert with Jandro and Farmers, did not comply with the liability insurance requirements. In light of these fraudulent acts, McClure argues that the Court should find Francisco, Jandro and Farmers liable for fraud and racketeering. The Court will address each of McClure's allegations of fraud in turn.

A. Law Governing the Court's Interpretation of IFB No. 90-337

Arizona Revised States § 13-2314.04A creates a private cause of action in favor of "[a] person who sustains reasonably foreseeable injury to his person, business, or property by a pattern of racketeering activity or by a violation of section 12-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages." Arizona defines a "pattern of racketeering activity" as either:

> (a) At least two acts of racketeering as defined in section 12-2301, subsection D, paragraph 4, subdivision (b), item (iv), (v), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xvi), (xviii), (xix), (xx), (xxvi) that meet the following requirements:
> (i) The last act of racketeering that are alleged as the basis of the claim occurred within five years of a prior act of racketeering.
> (ii) The acts of racketeering that are alleged as the basis of the claim were related to each other or to a common organizing principle, including the affairs of an enterprise. Acts of racketeering are related if they have the same or similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics.
> (iii) The acts of racketeering that are alleged as the basis of the claim were continuos or exhibited the theat of being continuous.
> (b) A single act of racketeering as defined in section 12-2301, subsection D, paragraph 4, subdivision (b), item (i), (ii), (iii), (xi), (xii), (xiv), (xxi), (xxii), (xxiii), (xxv) or (xxviii).

A.R.S. § 13-2314.04(T)(3). McClure alleges that Francisco, Jandro, and Farmers engaged in a pattern of racketeering involving the predicate offense of fraudulent schemes. Under A.R.S. § 13-2310(A), a person is guilty of engaging in a fraudulent scheme or artifice, if "pursuant to a scheme or artifice to defraud, [the person] knowingly obtains any benefit by means of false presents, representations, promises or material omissions[.]" McClure's theory of fraud and racketeering is premised upon a two-part scheme involving material omissions and fraudulent representations that were allegedly designed to manipulate the bidding process for IFB No. 90-337. First, Francisco allegedly evaded the requirements of IFB No. 90-337 in three different respects to submit the lowest bid and win the towing contracts. Second, after winning the towing contracts, Francisco, Jandro and Farmers allegedly concealed their evasion of the IFB's requirements by filing fraudulent insurance certificates which omitted material information. GICA does not dispute the fact that they did not disclose certain information on the insurance certificates, such as their use of subcontractor tow truck drivers. Rather, GICA asserts that this information was not required under the express terms of the IFB and argues that Statewide complied with all of IFB No.

90-337's requirements. Because the predicate offense of fraudulent schemes requires proof of a material omission or fraudulent representation, the Court must first analyze the requirements set forth in IFB No. 90-337 using contract principles to determine whether any material omissions or fraudulent representation occurred in this case.

While the bidding process alone does not create a contract, a bid ripens into a contract once it is voluntarily accepted by the offeree. AROK Const. Co. v. Indian Const. Services, 174 Ariz. 291, 294, 848 P.2d 870, 873 (App. 1993). The Court has a duty to "attempt to enforce [the] contract according to the parties' intent." Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 854 P.2d 1134, 1138 (1993). Intent is determined by interpreting the contract. See id. "The construction of a contract is a question of law where the terms of the agreement are plain and unambiguous." Shattuck v. Precisions Toyota, Inc., 115 Ariz. 586, 566 P.2d 1332 (1977). Although the court may not look to evidence that contradicts or varies the meaning of an agreement, Arizona has adopted the "Corbin approach," which allows the court to look at extrinsic evidence to determine the intent of the parties without a preliminary finding of ambiguity. Taylor, 854 P.2d at 1138, 1139-40.

B. Disclosure of Independent Contractors

McClure argues that IFB No. 90-337 required Statewide to notify the City of Phoenix that all of its drivers were independent contractors. GICA disagrees with this interpretation, arguing that McClure fails to distinguish between subcontractors for equipment and subcontractor tow truck drivers. According to GICA, IFB 90-337 required only subcontracts for equipment to be listed on the certificates of insurance.

Section 1.7 of IFB No. 90-337 sets forth the insurance requirements applicable to bidders. Bidding towing companies were required to provide various types of insurance, including workman's compensation, employer's liability, general liability and automobile liability. The successful bidder was required to provide a certificate of insurance, which listed the City of Phoenix as an additional insured, the name and address of the insurance company, the policy number, and the liability and coverage amounts, within 15 calendar days

after notification of the award. Section 1.7 also contained the following language, the interpretation of which is disputed by the parties:

> If the successful bidder is a joint venture or intends to use subcontractors for equipment under the agreement, the joint venture business entity and subcontractors must either be listed as the named insured on the policy or listed as an additional insured on the Certificate of Insurance.

§1.7, IFB No. 90-337.

McClure interprets §1.7 as requiring Statewide to list its tow truck drivers on the insurance certificates they submitted to the City after winning the bids for Precincts 6 and 9 since the drivers were independent contractors.

The plain language of §1.7 provides that *joint ventures* or *subcontracts for equipment* must be listed as the named insured or as an additional insured on the certificate of insurance. This provision complements section 2.6 of IFB No. 90-337, especially section 2.6.5, since some bidders would be subcontracting with other towing companies for the necessary equipment to meet minimum bid specifications. See §2.6.5, IFB 90-337. The Court finds that IFB No. 90-337 did not require Statewide, which was not a joint venture and did not subcontract for equipment, to list its subcontractor tow truck drivers on the insurance certificates. This interpretation is supported by the extrinsic evidence, namely the letter from William C. Bengert, Deputy Finance Director, to Steve W. Boswell, dated December 8, 1992. (Dkt.# 24, Ex. B) Bengert states, in relevant part:

> Section 2.10.3 in IFB 90-337, covers the issue of subcontracting for driver services quite clearly and, thus, all bidders for IFB 90-337 should have been aware of this provision. Although your December 2, 1992, letter refers to Provisions 2.6.7, 2.6.8, 2.6.9, and 1.7 as though these provisions apply to subcontracting for tow truck driver services; that is in error. These provisions would apply to the subcontracting for two truck equipment which, to our knowledge, DMC Industries, dba Statewide Towing does not do.

Based on the plain language of §1.7 of IFB No. 90-337 and the parties' intent as evidenced by Bengert's letter to Boswell dated December 8, 1992, the Court finds that Statewide was not required to disclose that its drivers were independent contractors on the insurance certificates filed with the City. Therefore, since such information was not required, McClure's theory of fraud and racketeering as to this particular claim fails as a matter of law.

C. Workers' Compensation Requirements

McClure alleges that Statewide did not comply with the workers' compensation insurance requirements set forth in IFB No. 90-337. According to McClure, Statewide either: (1) had to provide legally sufficient worker's compensation coverage for all of their drivers, or (2) ensure that their independent contractor drivers obtained legally sufficient coverage. McClure contends that Statewide did not comply with the workers' compensation requirements and intentionally concealed this failure after winning the tow contracts for Precincts 6 and 9.

Statewide's subcontracts with tow truck drivers were governed by the requirements set forth in §2.10 of the IFB, which deals with "Personnel." Section 2.10 requires subcontracts for tow truck driver services to comply with: (1) Circular E, Employers Tax Guide of the Internal Revenue Service Department, and (2) all Arizona Workers' Compensation insurance regulations. See § 2.10.3. The Court finds that McClure's interpretation of IFB No. 90-337's requirements governing subcontracts for two truck driver services is contrary to the plain language of the IFB and unsupported by the evidence. There is no language in the IFB stating that bidders were obligated to provide workers' compensation insurance for their subcontractor drivers or that they had to ensure that the drivers obtained such coverage. Morever, in a letter to Steve Boswell dated September 13, 1993,[2] Bengert, stated that "neither IFB 90-337, nor the tow service agreements themselves, requires subcontractors to provide workers compensation insurance for its subcontractors, nor is it required by state law." (Dkt. # 24, Ex. B) Bengert added, "DMC Industries, Inc. is in compliance with the applicable Worker's Compensation Insurance Laws of the State, as required by P-4176-94."[3] (Id.) Therefore, McClure's theory of fraud and racketeering

---

[2] Boswell worked at Statewide between January and June 1992. After leaving Statewide, Boswell wrote numerous letters to the City complaining about Francisco's independent contractor arrangements.

[3] Once a bid is accepted, it receives a new number. Here, IFB No. 90-337 became P-4176-94 once it was accepted. (Dkt.# 24, Ex. C)

- 8 -

1 regarding Statewide's alleged noncompliance with IFB No. 90-337's workers' compensation
2 requirements fails as a matter of law.  Neither the plain language, nor the extrinsic evidence
3 of the parties' intent, support McClure's interpretation of IFB No. 90-337's requirements
4 regarding workers' compensation for subcontracted tow truck drivers.

### D. Liability Insurance Requirements

McClure's final theory of fraud is premised upon Statewide's fraudulent noncompliance with the liability insurance requirements set forth in IFB No. 90-337.  Under IFB No. 90-337, the successful bidder was required to carry general liability and automobile liability insurance coverage, each containing a $500,000 (minimum) limit of liability. McClure asserts that Statewide did not carry the requisite liability insurance and filed false insurance certificates to mislead the City of Phoenix into believing that they were carrying the requisite coverage.  McClure supports this claim with a letter dated November 23, 1992, from Jerry J. Carnahan, Farmers Regional Agency Manager, to Charles Singleton, Procurement Manager for the City of Phoenix, stating "the certificate of insurance provided does not appear to reflect the coverages contained in our file." (Dkt. #19, Ex. L)

GICA admits that the coverages listed in the insurance certificate were not accurate, but denies that the inaccuracy was the product of a fraudulent scheme.  Rather, GICA contends that Statewide had actually complied with the IFB insurance requirements and that the inaccuracy resulted from an error by Farmers' Underwriting Department.  GICA's contentions are supported by a letter from Carnahan to Charles Singleton, City Procurement Manager, dated December 15, 1992, and a letter from Bengert to Boswell dated September 13, 1993.

Therefore, in light of the conflicting evidence supplied by the parties, the Court finds that a genuine dispute of fact exists as to whether the inaccuracies on Statewide's insurance certificates were the product of fraud or were the result of an error by Farmers' Underwriting

- 9 -

Department. In light of this dispute of material fact, the Court cannot grant McClure's request for summary judgment as to this claim.[4]

**II.     GICA's Cross-Motion for Summary Judgment on Plaintiff's Complaint**

GICA requests the Court to enter summary judgment in its favor and dismiss McClure's Complaint in its entirety. GICA argues that there is no genuine dispute about whether Francisco and Statewide complied with the requirements of IFB No. 90-337; therefore, McClure cannot prevail on the "case within the case" and its legal malpractice claim fails as a matter of law.

Arizona requires a plaintiff asserting a legal malpractice claim to prove "the existence of a duty, breach of duty, that the defendant's negligence was the actual and proximate cause of injury, and the 'nature and extent' of damages. Glaze v. Larsen, 207 Ariz. 26, P12, 83 P.3d 26, 29 (2004), *quoting* Phillips v. Clancy, 152 Ariz. 415, 733 P.2d 300, 303 (App. 1986). "A necessary part of the legal malpractice plaintiff's burden of proof of proximate cause is to establish that "but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit." Id.

The Court finds that summary judgment is inappropriate since there is a genuine dispute about whether Francisco and Statewide complied with all of the insurance requirements of IFB No. 90-337. As discussed *supra,* a genuine dispute exists as to whether inaccuracies regarding the liability coverage listed on Statewide's insurance certificates were the product of fraud. Assuming *arguendo* that Statewide had intentionally not carried the requisite liability insurance coverage and fraudulently concealed this fact to the City of Phoenix, then McClure could possibly prevail on the 'case within the case.' Therefore, the Court will deny GICA's cross motion for summary judgment.

---

[4]The Court notes that it has intentionally not discussed every argument raised in GICA's response. McClure's motion for summary judgment is premised upon the Court finding that they are entitled to summary judgment on at least one of the three allegations of fraud. Because McClure did not establish any of the allegations of fraud merited the entry of summary judgment in their favor, the Court finds it unnecessary to address GICA's other arguments.

**CONCLUSION**

Therefore, in light of the reasons set forth above,

**IT IS HEREBY ORDERED DENYING** McClure's First Motion for Partial Summary Judgment Re: Liability for Fraud and Racketeering. (Dkt. 18)

**IT IS FURTHER ORDERED DENYING** GICA's Cross-Motion for Summary Judgment on Plaintiff's Complaint. (Dkt. 23)

DATED this 24th day of July, 2007.

Stephen M. McNamee
United States District Judge