WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| McClure Enterprises, Inc., | ) | No. CV 05-3491-PHX-SMM |
| Plaintiff, | ) | **ORDER** |
| v. | ) | |
| General Insurance Company of America, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant General Insurance Company of America's ("GICA") Second Motion for Summary Judgment on Plaintiff's Complaint (Dkt. 76). Also pending is Plaintiff McClure Enterprises, Inc.'s ("McClure") Second Motion for Partial Summary Judgment Re: Professional Negligence of William J. Downey (Dkt. 80).[1]

**BACKGROUND**

**A. Statement of Facts**

In May of 1990, the City of Phoenix issued Invitation for Bid ("IFB") No. 90-337, which invited private towing companies to submit sealed bids for contracts to provide towing services for the six precincts into which the city is divided.[2]  McClure contends that Wayne

---

[1] The parties requested oral argument in this matter.  As the Court finds that the issues presented can be decided without oral argument, the Court denies this request.

[2] An IFB is one method of procuring services or supplies for public agencies.  Arizona Revised Statutes Annotated ("A.R.S.") § 41-2533 (2007); Arizona Administrative Code ("A.A.C.") R2-7-B301 to R2-7-B316.  A contract awarded under an IFB must be issued to the "lowest responsible and responsive bidder" whose bid meets the requirements and

Francisco ("Francisco"), owner and controller of DMC Industries, dba Statewide Towing ("Statewide"), Louis Jandro ("Jandro"), Francisco's insurance agent, and Farmer's Insurance ("Farmer's") committed fraud in connection with the winning bid Statewide submitted for Precincts 6 and 9 of the City of Phoenix.  McClure, which provided the second lowest bid for those precincts, claims that it would have received the contracts if Francisco, Jandro and Farmer's had not committed fraud.  According to McClure, Francisco avoided paying required worker's compensation and liability insurance premiums for his drivers by employing them as independent contractors.  McClure alleges that Francisco, with the assistance of Jandro and Farmer's, concealed Statewide's use of independent contractors by filing fraudulent insurance certificates with the City.  McClure argues that the economic advantage created by this fraudulent scheme enabled Statewide to submit the lowest bid and deprived it of the contracts.

**B. Procedural History**

The matter now before the Court is the result of a settlement agreement reached between the parties in a legal malpractice action, <u>McClure Enterprises, Inc. v. General Insurance Company of America</u>, CV-02-1107-PHX-FJM.  In that action, McClure accused his former attorney, William Downey, of malpractice for his representation in a lawsuit against Francisco, DMC Industries, Inc. and related entities.  In McClure's earlier lawsuit against Francisco, McClure alleged that it was deprived of the towing contracts for Precincts 6 and 9 due to fraudulent bids submitted by Francisco. McClure claims that Downey advised it to settle for an amount far below the true value of the lawsuit because he was having financial problems and needed the contingency fee.  After Downey's insurer GICA denied coverage for the legal malpractice claim, McClure and Downey entered into a Damron agreement providing for the entry of a $5,000,000 judgment against Downey in exchange for McClure's release and covenant not to execute the judgment against him.  McClure subsequently filed a lawsuit against GICA to contest the coverage issue, which was resolved

evaluation criteria set forth in the IFB.  A.R.S. § 41-2533(G); A.A.C. R2-7-B314.

1   in part by GICA agreeing:  (1) to accept coverage of Downey at the time the alleged

2   malpractice occurred, (2) to be named as a party in this action, and (3) to defend the legal

3   malpractice claim McClure has against Downey.  McClure's legal malpractice claim against

4   Downey is the subject of this lawsuit.

5   McClure filed his first motion for summary judgment, in what it proposed was the first

6   in a series of motions for partial summary judgment, on December 15, 2006 (Dkt. 18).

7   McClure asserted that no genuine dispute of fact or law existed about whether Francisco,

8   Jandro and Farmer's Insurance defrauded the City of Phoenix in obtaining the tow contracts

9   for Precincts 6 and 9.  GICA filed a Response and Cross-Motion for Summary Judgment on

10  February 7, 2007 (Dkt. 23).  The Court found that "Statewide was not required to disclose

11  that its drivers were independent contractors on the insurance certificates filed with the City"

12  and also that Statewide complied with the IFB No. 90-337's workers' compensation

13  requirements so that those two claims failed as a matter of law (Dkt. 35, Order dated July 24,

14  2007).  At the same time, though, the Court concluded that "a genuine dispute of fact exists

15  as to whether the inaccuracies on Statewide's [liability] insurance certificates were the

16  product of fraud or were the result of an error by Farmer's Underwriting Department," and

17  therefore denied both summary judgments (Id.).

18  GICA filed its Second Motion for Summary Judgment on Plaintiff's Complaint on

19  April 4, 2008 (Dkt. 76).  On the same day, McClure filed its Second Motion for Partial

20  Summary Judgment Re: Professional Negligence of William J. Downey (Dkt. 80).  McClure

21  also filed a motion for reconsideration (Dkt. 78) of this Court's Order dated July 24, 2007

22  (Dkt. 35), which the Court subsequently denied (Dkt. 82, Order dated April 10, 2008).  Both

23  parties have since filed their respective replies and responses to both motions for summary

24  judgment, and the matter is now fully briefed.

25  **STANDARD OF REVIEW**

26  A court must grant summary judgment if the pleadings and supporting documents,

27  viewed in the light most favorable to the nonmoving party, "show that there is no genuine

28  issue as to any material fact and that the moving party is entitled to judgment as a matter of

1    law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

2    Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law

3    determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248

4    (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the

5    outcome of the suit under the governing law will properly preclude the entry of summary

6    judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the

7    evidence must be "such that a reasonable jury could return a verdict for the nonmoving

8    party."  Id.; see Jesinger, 24 F.3d at 1130.

9        A principal purpose of summary judgment is "to isolate and dispose of factually

10   unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

11   against a party who "fails to make a showing sufficient to establish the existence of an

12   element essential to that party's case, and on which that party will bear the burden of proof

13   at trial."  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.

14   1994).  The moving party need not disprove matters on which the opponent has the burden

15   of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment

16   need not produce evidence "in a form that would be admissible at trial in order to avoid

17   summary judgment."  Id. at 324.  However, the nonmovant "may not rest upon the mere

18   allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing

19   that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co.,

20   Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint

21   Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

22                                  **DISCUSSION**

23   **I.    Attorney Malpractice**

24       Arizona requires a plaintiff asserting a legal malpractice claim to establish these

25   elements:  (1) the existence of an attorney-client relationship which imposes a duty on the

26   attorney to exercise that degree of skill, care, and knowledge commonly exercised by

27   members of the profession, (2) breach of that duty, (3) that such negligence was the actual

28   and proximate cause of resulting injury, and (4) the nature and extent of damages.  See Glaze

1   v. Larsen, 207 Ariz. 26, 29, 83 P.3d 26, 29 (2004) (citing Phillips v. Clancy, 152 Ariz. 415,

2   418, 733 P.2d 300, 303 (Ct. App. 1986)); see also Cecala v. Newman, 532 F. Supp. 2d 1118,

3   1134 (D. Ariz. 2007).  A claim for legal malpractice is commonly called a "case within the

4   case."  Phillips, 152 Ariz. at 418, 733 P.2d at 303.  In a legal malpractice claim, a plaintiff

5   must prove, among other things, that actual cause exists:  but for the attorney's negligence,

6   plaintiff would have succeeded in the original suit.  Id.

7        When malpractice occurred at the trial level, the attorney's negligence either

8   precluded a trial on the merits or prevented the client's case from being presented according

9   to professional standards. Id. at 421, 733 P.2d at 306.  Therefore, in a malpractice claim, the

10   issue is "what the outcome *should* have been if the issue had been properly presented."  Id.

11   at 421-22, 733 P.2d at 306-07.  The impact of the lawyer's negligence in the underlying

12   action is judged by an objective standard:  "what a reasonable judge or jury would have

13   decided, but for the attorney's negligence." Id. at 418, 733 P.2d at 303.  If the underlying

14   suit would have been tried to a jury, then a jury in the malpractice claim should decide the

15   disputed factual issues pertaining to the underlying suit.  Id. at 421, 733 P.2d at 306.

16        Causation is often at the heart of a dispute in a negligence case.  Courts often conflate

17   actual and proximate cause "by saying that the term proximate cause includes both cause in

18   fact and foreseeability components."   Dan B. Dobbs & Paul T. Hayden, Torts and

19   Compensation 236 (5th ed. 2005).  While actual cause or cause in fact often uses what is

20   commonly known as the "but for" rule, proximate cause refers to the foreseeable scope of

21   risk created by the defendant.  Id. at 211, 237.  Proximate cause is only addressed after a

22   plaintiff establishes actual cause.  Cecala, 532 F. Supp. 2d at 1139.  After a plaintiff crosses

23   the actual cause threshold in an attorney negligence claim, then plaintiff is required to show

24   "that the litigation injury was foreseeable in the sense that the attorney-defendant should

25   have anticipated the harm from the negligent act or omission."  Id.

26        Here, both parties seem to conflate actual and proximate cause in their arguments.

27   While the parties use the terms interchangeably, the Court finds that actual cause for the

28   attorney negligence claim is at the heart of the parties' arguments.  In addition to all of the

other elements, McClure must show that Downey's negligence was the actual cause of McClure's harm.  In other words, McClure must prove that but for Downey's negligence, McClure would have succeeded in the original suit.  See Phillips, 152 Ariz. at 418, 733 P.2d at 303.

As a result, the Court will logically address GICA's motion for summary judgment first as it is based on the argument that McClure cannot prove it would have succeeded in the original or underlying suit, and therefore GICA is entitled to summary judgment in its favor. Then, the Court will address Plaintiff's partial motion for summary judgment on Downey's professional negligence.

## II.    GICA's Motion for Summary Judgment on Plaintiff's Complaint

GICA requests the Court to enter summary judgment in its favor and dismiss McClure's Complaint in its entirety. GICA argues: (1) McClure cannot establish the validity of the underlying claims, (2) there is no evidence of causation to support the legal malpractice case, and (3) McClure offers no competent evidence of damages.

### A.    The Validity of McClure's Underlying Claims

GICA argues that McClure's legal malpractice claim fails as a matter of law because McClure cannot establish the validity of its underlying claims, the "case within the case" (Dkt. 76, p.4-10).  GICA alleges that "all of [the underlying] claims are based on the same factual allegations, and all require proof of proximate causation as an essential element of the claim (Id. at 4).   Therefore, GICA argues that summary judgment in its favor is appropriate.

In McClure's underlying suit, McClure set forth several causes of action, including intentional interference with business expectancy, common law fraud, negligence, conspiracy, and violation of RICO under Arizona law.[3]  GICA is mistaken that all of the

---

[3] McClure filed his complaint for the underlying claims in Maricopa County Superior Court on September 22, 1995 (Dkt. 23, Ex. D).  While the last claim is labeled as the "Seventh Claim for Relief," the complaint actually alleges only six claims.  The "Second Claim for Relief" entitled "Piercing the Corporate Veil" has no bearing on the instant

underlying claims require proof of proximate cause.  Proximate cause is a concept associated with negligence whereas intentional torts, such as intentional interference with a business expectancy, do not require proximate cause.

The record does not indicate at what stage the underlying claims were settled. Because Downey's alleged negligence either precluded a trial on the merits or prevented McClure's case from being presented according to professional standards, the issue is "what the outcome *should* have been."  See Phillips, 152 Ariz. at 421, 733 P.2d at 306.  If the underlying suit would have been tried to a jury, then a jury in the malpractice claim should decide the disputed factual issues pertaining to the underlying suit.  Id.  Therefore, the Court will only address whether McClure's underlying claims should have failed as a matter of law.  As GICA misstates the elements required for the underlying claims, the Court will discuss the elements required and whether McClure sufficiently alleged those elements for the underlying claims before addressing GICA's specific arguments about causation.

### 1.    Intentional Interference with Business Expectancy

To establish a prima facie case of intentional interference with a business expectancy, a plaintiff must prove:  (1) the existence of a valid contractual relationship or business expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted. Hill v. Peterson, 201 Ariz. 363, 366, 35 P.3d 417, 420 (Ct. App. 2001).  "Furthermore, the interference must be 'improper as to motive or means' before liability will attach."  Id. (citing Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Seven factors found in the Restatement (Second) of Torts § 767 (1979) determine whether a particular action is improper.  Id.

In his underlying complaint, McClure alleged that it had a valid business expectancy in the City of Phoenix towing contracts, and that Francisco and Jandro knew of McClure's

motion for summary judgement, and therefore will not be addressed.

1   expectancy (Dkt. 23, Ex. D, ¶¶ 35-36).  Furthermore, "Francisco and Jandro intentionally,

2   wrongfully and improperly interfered with McClure's expectancy" (Id. at ¶ 37).  Specifically,

3   McClure alleges that Francisco fraudulently misclassified his employees as independent

4   contractors and conspired with Jandro to prepare fraudulent insurance certificates (Id.).

5   These actions led Francisco to submit an artificially lower bid, gain an unfair advantage, and

6   win the towing contract (Id.).  As a result, McClure alleged it was damaged (Id. at ¶ 38).  In

7   the underlying complaint, McClure alleged sufficient facts for an intentional interference

8   with a business expectancy claim.

9                          **2.      Common Law Fraud**

10      In Arizona, a showing of fraud requires:  (1) a representation, (2) its falsity, (3) its

11   materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the

12   speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated,

13   (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to

14   rely on it, and (9) his consequent and proximate injury.  Echols v. Beauty Built Homes, Inc.,

15   132 Ariz. 498, 500, 647 P.2d 629, 631 (1982) (citing Nielson v. Flashberg, 101 Ariz. 335,

16   338-39, 419 P.2d 514, 517-18 (1966)).  In order to prevail at trial, each element must be

17   supported by sufficient evidence that is not "doubtful, vague, speculative, or inconclusive."

18   Id. (citations omitted).

19      In certain circumstances under state law, an unsuccessful bidder may recover damages

20   for fraud in the bidding process against a successful bidder.  City Solutions Inc. v. Clear

21   Channel Commc'ns, Inc., 365 F.3d 835, 842 (9th Cir. 2004).  In City Solutions, the Ninth

22   Circuit held that under California law a plaintiff could have justifiably relied on a defendant's

23   representations that it would work exclusively with plaintiff in submitting a joint bid to the

24   city.  Id. at 841.  Furthermore, the Ninth Circuit found that a reasonable jury could find that

25   defendant submitted a better bid because of the knowledge it fraudulently gained from its

26   dealings with plaintiff.  Id.  Likewise, a reasonable jury could find that plaintiff could have

27   found someone else with whom to bid earlier in the process, had it not relied on defendant's

28   promises to bid with them, thereby placing it in a better position to compete.  Id.  In short,

the Ninth Circuit held that a reasonable jury could conclude that plaintiff justifiably relied on defendant's misrepresentations.  Id.  While the Ninth Circuit analyzed fraud under California law, the elements of common law fraud in California are similar to Arizona law.

Here, McClure did not sufficiently allege facts in the underlying claim to satisfy the elements of common law fraud.  McClure did not allege that Francisco and Jandro, the speakers of the alleged fraud, intended McClure to be the recipient of the fraudulent misrepresentations and act in a manner that it reasonably contemplated.  Rather, McClure alleged that Statewide's fraud was intended to induce the recipient or hearer of the fraud, the City of Phoenix, to award the contracts to Statewide.  McClure stated that "Jandro issued fraudulent certificates to the City of Phoenix," "these representations were material and critical to winning and maintaining the City of Phoenix towing contracts," and "[t]he City of Phoenix justifiably relied upon the representations of Francisco and Jandro in evaluating Francisco's bid" (Dkt. 23, Ex. D, ¶¶ 31, 51, 52).  In City Solutions, defendant made false representations to plaintiff that it would work exclusively with plaintiff and submit a joint bid to the city.  This case can be distinguished from City Solutions because McClure did not allege that Statewide made any material, false representations to it.  The Court need not address factual issues of causation, whether McClure justifiably relied on Statewide's representation, because McClure did not allege that it itself was the recipient of a material, false representation.  Throughout the attorney negligence claim as well, McClure has maintained that Francisco and Jandro spoke their fraudulent misrepresentations to the City of Phoenix.  Therefore, McClure's underlying claim of common law fraud failed as a matter of law, which a reasonable judge should have found.  See Phillips, 152 Ariz. at 421-22, 733 P.2d at 306-07.

This decision is consistent with the Court's earlier ruling on the first round of motions for summary judgment.  The parties and the Court only addressed whether a genuine dispute of fact existed about whether Francisco, Jandro, and Farmer's had defrauded the City of Phoenix.  The Court concluded that "a genuine dispute exists as to whether inaccuracies regarding the liability coverage listed on Statewide's insurance certificates were the product

of fraud." (Dkt. 35, Order dated July 24, 2007). Although the Court concluded that Francisco, Jandro, and Farmer's could have defrauded the City, the Court did not conclude that they defrauded McClure. In light of the above discussion, the Court concludes that McClure's claim of common law fraud failed because McClure had not alleged that Francisco, Jandro, and Farmer's made a material, false representation to it, which was an essential element. Although McClure's common law fraud claim should have failed, this does not mean that Francisco, Jandro, and Farmer's did not act fraudulently in its dealings with the City of Phoenix. Francisco, Jandro, and Farmer's allegedly fraudulent dealings could be considered improper interference, and thus McClure had a valid claim for intentional interference with business expectancy.

### 3.   Negligence

In the underlying complaint, McClure labeled its claim as general negligence and did not specifically allege negligent supervision. However, its factual allegations may have alleged a negligent supervision theory, and therefore, the Court addresses both theories.

### a.   Generally; Professional Negligence

To establish negligence, McClure must prove: (1) the existence of a duty recognized by law requiring Farmer's to conform to a certain standard of care, (2) Farmer's breach of that duty, (3) a causal connection between the breach and the resulting injury, and (4) actual damages. Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix, 216 Ariz. 454, 457, 167 P.3d 711, 714 (Ct. App. 2007) (citing Ontiveros v. Borak, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983)). The Arizona Supreme Court has held that the duty or obligation must be recognized by law in order to maintain a negligence action. Ferguson v. Cash, Sullivan and Cross Ins. Angency, Inc., 171 Ariz. 381, 384, 831 P.2d 380, 383 (Ct. App. 1991) (citing Hamman v. County of Maricopa, 161 Ariz. 58, 61, 775 P.2d 1122, 1125 (1989)). The danger reasonably perceived defines the duty owed, and when a duty exists, the defendant must conform to a particular standard of conduct in order to protect others from unreasonable risks of harm. Id. (citations omitted).

Arizona courts recognize that standards for professional negligence are "not universal among the professions . . . [and] will confront each case as it comes before [them]." Napier v. Bertram, 191 Ariz. 238, 242, 954 P.2d 1389, 1393 (1998) (quotation omitted).  In Arizona, an insurance agent's clients may assert claims for professional negligence against the agent. Webb v. Gittlen, 217 Ariz. 363, 364, 174 P.3d 275, 276 (2008).  Generally, Arizona law has recognized an insurance agent's duty to only the client.  Napier, 191 Ariz. at 242, 954 P.2d at 1393.

At the same time, "Arizona does not require privity to maintain a negligence action in tort."  Ferguson, 171 Ariz. at 384, 831 P.2d at 383.  When the defendant's negligence causes injury to a third party, Arizona courts have recognized that a duty may arise out of a relationship between the defendant and the third party.  Id. at 385, 831 P.2d at 384.  Under certain circumstances, professionals may be liable for injuries to third parties when "the particular professional occupied a special status or relationship with the actor or the injured third party." Id.  "The test is whether the professional had a duty to protect foreseeable third parties from harm."  Id. (citing Hamman, 161 Ariz. at 63-64, 775 P.2d at 1127-28).  In Ferguson, the court determined whether an injured third party could bring a direct action against an insurance agency alleging that it had been directly damaged by the agency's negligent actions.  The court stated the law of duty in Arizona as follows:

> The question of duty is decided by the court.  The question is whether the relationship of the parties was such that the Defendant was under an obligation to use some care to avoid or prevent injury to the Plaintiff.  If the answer is no, the Defendant is not liable even though he may have acted negligently in light of foreseeable risks.

Id. at 386, 831 P.2d at 385.  Considering the facts of the case, the court then held that the insurance agency owed no duty to the third party.  Id.

In the underlying claim, McClure alleged that after the City of Phoenix put Farmer's on notice that Jandro was issuing fraudulent certificates of insurance, Farmer's owed a duty to McClure to properly investigate the allegations and take all necessary remedial steps (Dkt. 23, Ex. D, ¶¶ 57-58).  McClure further alleged that Farmer's breached its duty and negligently investigated the allegations (Id. at ¶ 59).  McClure concluded that if Farmer's had

- 11 -

1    properly investigated and taken remedial steps, then the City of Phoenix would have
2    terminated Francisco's contracts and awarded them to it (Id. at ¶ 60).

3    McClure mistakenly presumed that Farmer's owed a general duty to McClure.  In
4    Ferguson, the court held that a third party could not maintain a direct cause of action against
5    an insurance company for its alleged negligence in failing to procure an umbrella liability
6    insurance policy for its insured.  Ferguson, 171 Ariz. at 382, 831 P.2d at 381.  The court
7    found that the insurance company had no special relationship with the third party, and thus
8    it owed no duty and was not liable.  Id. at 386, 831 P.2d at 385. Likewise here, the
9    connection between Farmer's and McClure was too attenuated, and Farmer's did not occupy
10   a special relationship with McClure, a third party.  If Farmer's occupied any special
11   relationships with an injured third party, it would most likely have been with the City of
12   Phoenix who received the allegedly fraudulent insurance certificates.  Therefore, McClure
13   did not have such a relationship with Farmer's to impose an obligation on Farmer's to avoid
14   or prevent injury to it. See id.

15   Furthermore, Farmer's could not have reasonably perceived the danger to McClure.
16   Although Farmer's employed and had control over Jandro, McClure cannot be considered
17   a foreseeable third party that Farmer's had a duty to protect from harm.  See id. at 385, 831
18   P.2d at 384 (citing Hamman, 161 Ariz. at 63-64, 775 P.2d at 1127-28).  Farmer's was not in
19   a position to foresee that one of its agent's alleged fraud on the City of Phoenix would lead
20   to the awarding of a towing contract to Statewide in the City's bidding process, which would
21   then injure one of the competing bidders, McClure.  Thus, McClure could not have satisfied
22   the test for the particular circumstance where a duty is owed to a third party.  See id.

23                          **b.      Negligent Supervision**

24   Under a theory of negligent supervision or retention, a plaintiff must show that an
25   employer knew or should have known its employee behaved in a dangerous or otherwise
26   incompetent manner, and the employer failed to adequately supervise the employee. 29 Am.
27   Jur. Trials § 267 (2008).  Among other elements, a plaintiff must plead and prove that the
28   defendant employer had a duty to protect the plaintiff from the injury caused by the

1   employee.  Id.  Generally, a close connection or relationship must exist between the plaintiff
2   and the defendant employer's business or, in other words, the plaintiff must be a reasonably
3   foreseeable victim.  Id.  When a business involves the public, an employer may have a
4   general duty to foreseeable members of the public.  Id.  Negligent supervision is grounded
5   on omissions or actions by the employer once the employer becomes chargeable with
6   knowledge of problems concerning an employee during the course of employment.  25
7   Causes of Action 2d § 99 (2008).

8        Negligent supervision is a theory of liability for the employer's *own* negligence.
9   Arizona follows the general rule concerning negligent hiring and supervision of employees
10  found in the Restatement (Second) of Agency § 213.  Kassman v. Busfield Enters., Inc., 131
11  Ariz. 163, 166, 639 P.2d 353, 356 (Ct. App. 1981).  "'A person conducting an activity
12  through servants or other agents is subject to liability for harm resulting from his conduct if
13  he is negligent or reckless: . . . (c) in the supervision of the activity; or (d) in permitting, or
14  failing to prevent, negligent or other tortious conduct by persons, whether or not his servants
15  or agents, upon premises or with instrumentalities under his control.'"  Id. (quoting
16  Restatement (Second) of Agency § 213(c)-(d)).

17       The Arizona Court of Appeals addressed negligent supervision when investors
18  brought a negligent supervision action against a stock brokerage firm, E.F. Hutton & Co., as
19  well as a RICO claim against the stock brokers themselves.  In DeJonghe v. E.F. Hutton &
20  Co., the plaintiffs alleged that they had suffered monetary loss as a result of the stock
21  brokers' speculative trading, excessive trading, and excessive risk exposure, and they showed
22  that E.F. Hutton had participated in its brokers' acts.  171 Ariz. 341, 343, 345-46, 830 P.2d
23  862, 864, 866-67 (Ct. App. 1991).  The Arizona Court of Appeals held that the plaintiffs
24  presented sufficient evidence of E.F. Hutton's breach of its standard of care in order to
25  establish the negligent supervision of its brokers.  Id. at 346, 830 P.2d at 867.  Likewise, the
26  Arizona Court of Appeals addressed negligent supervision in Dawson v. Withycombe.  In
27  Dawson, the court decided whether a corporate director has a personal or affirmative duty
28  to protect potential creditors from fraud and misrepresentations made by corporate employees

or agents. 216 Ariz. 84, 109, 163 P.3d 1034, 1059 (Ct. App. 2007). Under a negligent supervision theory, the plaintiff alleged that the directors had a general duty to act reasonably for persons facing a foreseeable risk in connection with obtaining a line of credit. Id. While the court discussed duty in the context of a corporate director, it focused its discussion on the parties to underlying transactions and whether a duty should be expanded to potential creditors. Id. at 109-110, 163 P.3d at 1059-60. The court noted that both Arizona state and federal courts had not expanded the duty to potential creditors or interested third parties. Id. at 110-11, 163 P.3d at 1060-61.

In the underlying claim, McClure alleged that Farmer's was negligent by not investigating one of its agents, which can be perceived as a claim for negligent supervision. However, McClure was required to plead that Farmer's had a duty to protect it from the injury caused by Jandro. McClure did not allege that Farmer's business involved the public so that Farmer's had a general duty to foreseeable members of the public. In order for Farmer's to owe a duty, McClure should have had a close connection or relationship to Farmer's business or, in other words, be a reasonably foreseeable victim. McClure's underlying claim can be distinguished from DeJonghe because in DeJonghe, the plaintiff investors had engaged in transactions with E.F. Hutton and its stock brokers, and E.F. Hutton's stock brokers directly harmed them by those transactions. Here though, McClure was not part of a transaction with Farmer's or its agent. McClure's case is more analogous to Dawson, in which the court declined to extend a duty to potential creditors or interested third parties. McClure did not receive the allegedly false liability insurance certificates, rather the City of Phoenix received them. If Farmer's had a duty to a third party to supervise one of its agents, the duty would most likely have been to the City of Phoenix who received the fraudulent certificates. While the City of Phoenix may have been an interested third party, McClure stood at an even further distance from the exchange of the insurance certificates. No existing Arizona law supports an expansion of the duty to McClure.

The Arizona Supreme Court has held that the duty or obligation must be recognized by law in order to maintain a negligence action, and McClure did not allege one. See

1  Ferguson, 171 Ariz. at 384, 831 P.2d at 383.  As Farmer's owed no duty to McClure, either

2  under a general negligence or a negligent supervision theory, McClure's underlying

3  negligence claim against Farmer's failed as a matter of law.

4                **4.**        **Conspiracy**

5        The Supreme Court of Arizona has held that there is no such thing as a civil action for

6  conspiracy.  Tovrea Land & Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 131, 412 P.2d 47, 63

7  (1966) (citing Hale v. Brown, 84 Ariz. 61, 70, 323 P.2d 955, 961 (1958)).  "While Arizona

8  does not recognize a civil action for conspiracy, it does recognize 'an action for damages

9  caused by acts committed pursuant to a conspiracy.'"  Wojtunik v. Kealy, 394 F. Supp. 2d

10  1149, 1172 (D. Ariz. 2005) (quoting Estate of Hernandez v. Flavio, 187 Ariz. 506, 510, 930

11  P.2d 1309, 1313 (1997)).  "Liability for civil conspiracy requires that 'two or more

12  individuals agree and thereupon accomplish an underlying tort which the alleged conspirators

13  agreed to commit.'"  Id. (quoting Wells Fargo Bank v. Arizona Laborers, Teamsters and

14  Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz. 474, 498, 38 P.3d 12, 36

15  (2002)).  Although a plaintiff need not show an express agreement to prevail on a civil

16  conspiracy claim, there must be at least a tacit understanding, and the plaintiff must allege

17  specific facts that support the inference of an agreement.  S. Union Co. v. Sw. Gas Corp., 165

18  F. Supp. 2d 1010, 1021 (D. Ariz. 2001) (internal citations and quotation marks omitted).  A

19  conspiracy "may sometimes be inferred from the nature of the acts done, the relations of the

20  parties, the interests of the alleged conspirators, and other circumstances."  Id.

21        Here, McClure claimed that Francisco, Jandro, and Farmer's should be liable for a

22  conspiracy.  McClure alleged that Francisco and Jandro committed the underlying tort of

23  intentional interference with a business expectancy.  McClure also alleged that Farmer's is

24  vicariously liable for Jandro's actions (Dkt. 23, Ex. D, ¶ 74).  McClure contended that Jandro

25  acted as an insurance broker/agent for Francisco at all times (Id. at ¶ 62).  As such, Jandro

26  was "fully aware" of Francisco's employee misclassification scheme and the agreements

27  entered into between Francisco's entities and the City of Phoenix (Id. at ¶¶ 62-63).  McClure

28  further contended Jandro had knowledge that DMC and Statewide did not have the

- 15 -

appropriate insurance required by the City of Phoenix and that without his certification, Francisco and the related entities would not have obtained or continued operating under the City of Phoenix contracts (Id. at ¶¶ 64-66).  Despite that knowledge, Jandro allegedly issued certificates of insurance to the City of Phoenix (Id. at ¶ 67).  As such, McClure alleged that "Jandro and Francisco knowingly acted in concert to obtain and maintain towing contracts" (Id. at ¶ 68).  McClure sufficiently alleged at least a tacit understanding between Jandro and Francisco, and an agreement between Jandro and Francisco can be inferred from the nature of the acts, relations, and interests of the parties.  Therefore, McClure sufficiently alleged conspiracy in the underlying claim.

## 5.     RICO claim

The Arizona RICO act can be found in A.R.S. § 13-2301, *et seq.*  Under A.R.S. § 13-2314.04(A), "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity . . . may file an action in superior court . . ."  A.R.S. § 13-2314.04(T)(3)'s definition of a pattern of racketeering activity includes at least two acts of racketeering found in parts of § 12-2301(D)(4)(b) that constitute a pattern.  "A scheme or artifice to defraud" is considered an act of racketeering.  A.R.S. § 13-2301(D)(4)(b)(xx).  In order to be considered a pattern, the acts alleged as the basis of the claim must meet these requirements:  (1) the last act must have occurred within five years of a prior act, (2) the acts were related to each other or to a common external organizing principle, and (3) the acts were continuous or under the threat of being continuous.  A.R.S. § 13-2314.04(T)(3).

In his underlying complaint, McClure alleged that Jandro, Francisco, and Farmers's actions constituted a scheme or artifice to defraud (Dkt. 23, Ex. D, ¶¶ 77-78).  McClure alleged that they used false writings, knowing that the writings contained fraudulent statements regarding insurance for Statewide's towing contracts (Id. at ¶ 78).  McClure alleged that Jandro, Francisco, and Farmer's provided those false writings to, "among others, the Arizona Department of Public Safety, the State Department of Insurance, the City of Phoenix Police Department and the City of Peoria Police Department" (Id.).  McClure's

1    allegation of at least two acts that constitute a pattern can be inferred from this statement.
2    McClure appeared to have alleged enough facts for a civil action under RICO.  Even if
3    McClure's underlying complaint would have been considered deficient, unlike McClure's
4    fraud and negligence claims, the defects do not appear so deficient as to have made an
5    amendment of the complaint futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962).

6                    **6.    Causation**

7                        **a.    Generally**

8            As already noted, GICA is mistaken that all of the underlying claims require proof of
9    proximate cause because that is a concept associated with negligence.  Some of the
10   underlying claims have causation elements, though.  For instance, intentional interference
11   with a business expectancy requires, among other things, intentional interference causing a
12   termination of the expectancy and resultant damage to the party whose expectancy has been
13   disrupted.  Hill, 201 Ariz. at 366, 35 P.3d at 420.  Although GICA's specific arguments
14   regarding proximate cause may not apply to all of the claims, GICA's general arguments
15   regarding causation should be addressed.

16           With regards to causation, GICA argues that McClure is "required to prove that it
17   would have been the successful bidder for Precincts 6 and 9 if Statewide had paid for
18   additional general liability insurance" (Dkt. 76, p.5).  GICA claims that "McClure has not
19   disclosed any evidence establishing crucial links in the chain of causation" (Id. at 6).
20   Specifically, McClure has not used any experts or produced any evidence showing how any
21   increased premium costs allocated across Statewide's multiple bids and contracts with the
22   City of Phoenix and other governmental agencies would have increased and adversely
23   affected Statewide's bid (Id.).  Furthermore, "Plaintiff appears to be under the misimpression
24   that Farmers [sic] Insurance was the only carrier writing coverage for DMC" (Dkt. 92, p. 2).
25   In short, GICA claims that McClure has not shown that it would have won the contracts if
26   Statewide carried additional insurance (Dkt. 76, p.6).

27           For GICA's argument that McClure is required to prove that it would have been the
28   successful bidder, GICA  relies on Rotec Industries, Inc. v. Mitsubishi Corp. and Southern

1  Union Co. v. Southwest Gas Corp. 348 F.3d 1116 (9th Cir. 2003); 180 F. Supp. 2d 1021 (D.

2  Ariz. 2002). Under Arizona law, the Southern Union court determined that "to prevail on

3  a claim of tortious interference with a business relationship, 'when the relationship is

4  prospective, there must be a reasonable assurance that the contract or relationship would have

5  been entered into' but for the interference." 180 F. Supp. 2d at 1048. In the context of a

6  merger, the court analyzed defendant's arguments that the highest bid was not the

7  determining factor and "other factors of equal importance" had an impact on the transaction.

8  Id. The court engaged in a fact-specific analysis and ultimately determined that genuine

9  issues of material fact existed over whether the plaintiff and defendant were reasonably

10 assured of consummating a merger. Id. at 1049. The court then addressed whether the

11 alleged interference was the "but for" cause of the failed expectancy and found genuine

12 issues of material facts whether the alleged interference had an influence or effect on the

13 transaction. Id. at 1049-50. On the other hand, the Rotec court determined that plaintiff did

14 not produce any evidence showing that defendant's alleged "buying off" of two committee

15 members influenced the decision of a sixty-member committee. 348 F.3d at 1122-23.

16 Furthermore, the committee had recommended both plaintiff's and defendants' companies.

17 Id. at 1123. Therefore, the court found that plaintiff simply did not come forward with any

18 facts demonstrating a connection between the committee's decision not to award the contract

19 to plaintiff and defendants' allegedly improper conduct. Id.

20         McClure responds to GICA's arguments that if Statewide honestly disclosed the

21 amount of insurance it carried, which was none, then it would have been disqualified from

22 the bidding process altogether for not complying with the bid requirements. McClure

23 contends that under these circumstances, McClure must only prove that it would have been

24 awarded the contracts in the event of Statewide's disqualification (Dkt. 89, p.6). McClure

25 offers evidence that McClure's and Statewide's bids only differed by 0.8 and 1.2 points for

26 Precincts 6 and 9, respectively (Dkt. 90, ¶ 11-12). Meanwhile, the next bidders had scores

27 22.2 and 29.5 points lower than McClure's bids for Precincts 6 and 9, respectively (Id.).

28 Furthermore, McClure argues that price was not the determining factor in the bidding

1    process, as evidenced by the City not selecting the lowest price bids in other precincts (Id.

2    at ¶ 13).  McClure alleges that if the City did not pick Statewide, then the City would not

3    have "jumped over McClure/Western Towing 0.8 or 1.2 points away and picked a bid that

4    was 23 or 30.7 points away" (Dkt. 89, p.6).  Finally, when the City later terminated

5    Statewide's contracts for other reasons, the City selected McClure without further submission

6    of materials or rebidding (Dkt. 90 at ¶ 14).

7        McClure asserts that this Court already ruled upon the issues of fraud in the

8    underlying claim.  The Court previously denied the parties' motion and cross-motion for

9    summary judgment because a genuine dispute existed about whether Francisco and Statewide

10   complied with the liability insurance requirements of IFB No. 90-337 (Dkt. 35, Order dated

11   July 24, 2007).  Viewing the factual assertions in a light most favorable to Plaintiff, the Court

12   concluded that "a genuine dispute of fact exists as to whether the inaccuracies on Statewide's

13   insurance certificates were the product of fraud or were the result of an error by Farmer's

14   Underwriting Department" (Id.).

15       While McClure must show that Francisco, et al. caused its damages in the underlying

16   claims, the parties dispute whether the alleged fraud would have had an effect on the bidding

17   process.  GICA first maintains that Statewide complied with the auto insurance requirements

18   of IFB 90-337 and the towing contract.  Regardless, GICA argues that the contractor's failure

19   to submit proper insurance certificates is inconsequential (Dkt. 92, p. 3), and McClure is

20   incorrect in assuming that Statewide would have been disqualified.  GICA apparently

21   suggests that if Statewide committed fraud but it was immaterial to Statewide's bid and the

22   bidding process, then Statewide caused no damage to McClure.

23       However, McClure asserts that the fact of Statewide's fraud alone would have led to

24   its disqualification as the City would not have selected a bidding company that would have

25   committed fraud.  McClure presents evidence that "when the City of Phoenix caught

26   Francisco in another fraud that was easier to prove, they terminated Statewide's contracts for

27   Precincts 6 and 9 and selected McClure/Western Towing without further submission of

28   materials or rebidding" (Dkt. 90 at ¶ 14).  A contract awarded under an IFB must be issued

1  to the "lowest responsible and responsive bidder" whose bid meets the requirements and
2  evaluation criteria set forth in the IFB.  A.R.S. § 41-2533(G); A.A.C. R2-7-B314.  As
3  McClure alleges that price alone was not a determining factor, the City could have
4  determined that Francisco's alleged fraud did not make Statewide a "responsible" bidder.
5  Viewing the factual assertions in a light most favorable to McClure, the Court finds that
6  genuine issues of material facts exist whether Statewide's alleged fraud could have
7  influenced or affected the bidding process.

8  Finally, GICA asserts that McClure has not produced any expert testimony to prove
9  how any increased premium costs would have increased the price and adversely affected
10 Statewide's bid.  However, McClure asserts that the fraud alone would have disqualified
11 Statewide's bid, and McClure need not produce expert testimony on issues of fraud.
12 Furthermore, McClure need not produce evidence "in a form that would be admissible at trial
13 in order to avoid summary judgment."  See Celotex, 477 U.S. at 324.  Moreover, "the jury
14 in the malpractice case should decide the disputed factual issues pertaining to the original
15 suit."  Phillips, 152 Ariz. at 421, 733 P.2d at 306.  McClure alleges that price was not the
16 determining factor so that McClure would have received the contract but for Statewide's
17 alleged fraud.  McClure has produced evidence that the differences between its and
18 Statewide's bids were minimal.  Furthermore, McClure has shown that it later received the
19 bids after Francisco was allegedly "caught" in another fraud (Dkt. 89, p.7).  McClure has set
20 forth specific facts showing that there is a genuine issue for trial, and therefore McClure's
21 claim survives summary judgment. FED. R. CIV. P. 56(e); see Matsushita, 475 U.S. at 585-
22 88; Brinson, 53 F.3d at 1049.

23                          **b.      Causation for RICO**

24 GICA claims that McClure's underlying RICO claim is barred by precedent indicating
25 that plaintiffs must show their damages were proximately caused by defendant's violation
26 of a RICO act, not just a "but for" cause of the injury (Dkt. 76, p. 6-7).

27 In the auction bidding context, GICA mostly offers federal law interpreting the federal
28 RICO act for its argument that McClure's Arizona RICO claim is barred by precedent.  In

1   Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 981-82 (9th Cir. 2008), the Ninth

2   Circuit outlined the development and current state of law for federal RICO.  The United

3   States Supreme Court has held that in addition to actual cause, a plaintiff must show that the

4   defendant's RICO violation proximately caused her injury.  Id. at 981 (citing Holmes v. Sec.

5   Investor Prot. Corp., 503 U.S. 258, 265-66, 268 (1992)).  Proximate cause requires "'some

6   direct relation between the injury asserted and the injurious conduct alleged.'" Id. (quoting

7   Holmes, 503 U.S. at 268).  The Supreme Court later "clarified that the Holmes proximate

8   cause requirement not only bars RICO suits by derivative victims, or those whose injuries

9   are 'purely contingent on the harm suffered by' direct victims, but generally precludes

10  recovery by those whose injuries are only tenuously related to the RICO violation at issue."

11  Id. (citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006).  "Under Anza, courts

12  must scrutinize the causal link between the RICO violation and the injury . . . [and] where

13  the violation is not itself the immediate cause of the plaintiff's injury, proximate cause may

14  be lacking."  Id. (citing Anza, 547 U.S. at 456-61).

15       GICA asserts that under Anza, a RICO plaintiff cannot show proximate cause when

16  the government is the one directly harmed by fraud (Dkt. 76, p. 7-8).  In Anza, a steel

17  company allegedly sold products free of sales tax and submitted fraudulent sales tax returns

18  in violation of the mail fraud or wire fraud statutes.  547 U.S. at 454.  A competing business

19  alleged it was harmed by the steel company's non-payment of taxes, which allowed the

20  company to offer lower prices that attracted more customers.  Id.  The Supreme Court found

21  that the State of New York, and not the competitor, was the direct victim of the alleged RICO

22  violation.  Id. at 458.  The Supreme Court reasoned that difficulty "can arise when a court

23  attempts to ascertain the damages caused by some remote action," and "the element of

24  proximate causation recognized in Holmes is meant to prevent these types of intricate,

25  uncertain inquiries from overruning RICO litigation."  Id. at 458-460.

26       GICA also cites two recent Ninth Circuit cases that applied Anza in order to argue that

27  McClure could not have shown proximate cause because his losses were speculative (Dkt.

28  76, p.8) (citing Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008)

1    (company's violation of copyright laws undercut prices of competitor); <u>Canyon County</u>, 519

2    F.3d 969 (agricultural companies' hiring of illegal workers caused Idaho county to incur

3    additional costs)).  Furthermore, GICA cites the Seventh Circuit's decision in <u>James Cape</u>

4    <u>& Sons Co. v. PCC Const. Co.</u>, 453 F.3d 396, 403-04 (7th Cir. 2006), which discussed

5    proximate cause in the bidding context.  The Seventh Circuit found that the bidding context

6    posed concerns for proximate cause because defendants may have won some bids absent the

7    bid-rigging scheme, and plaintiff could not show what portion of its "lost market share" was

8    attributable to the bids lost.  <u>Id.</u> at 403.  GICA insists that the Seventh Circuit's arguments

9    regarding RICO proximate cause are persuasive in the bidding context (Dkt. 92, p.6).

10        In Arizona, the Court of Appeals addressed the issue "whether a plaintiff must show

11   that the defendant's predicate RICO violation proximately caused the plaintiff's injury in

12   order to recover treble damages under A.R.S. § 13-2314(A), RICO's civil remedy provision."

13   <u>Rosier v. First Fin. Capital Corp.</u>, 181 Ariz. 218, 220, 889 P.2d 11, 13 (Ct. App. 1994).  The

14   court noted that Arizona's RICO act is patterned after the federal RICO act and, therefore,

15   looked to federal interpretations for guidance because the issue had not yet been addressed

16   by Arizona courts.  <u>Id.</u> at 221, 889 P.2d at 14.  Relying on <u>Holmes</u>, the court held that "in

17   order to state a cause of action for civil damages under RICO, the plaintiff's damages must

18   be proximately caused by the defendant's violation of a predicate RICO act."  <u>Id.</u> at 222, 889

19   P.2d at 15.  The court found that plaintiffs did not controvert defendants' evidence that their

20   loss was caused solely by market forces and not due to defendants' misrepresentation.  <u>Id.</u>

21   Therefore, the court concluded that plaintiff did not meet the higher level of proof of

22   proximate causation for RICO, "directly injured" by racketeering.  <u>Id.</u>

23        While Arizona looked to federal guidance and applied <u>Holmes</u> in <u>Rosier</u>, this Court

24   cannot determine with certainty whether an Arizona judge would have applied the stricter

25   standard of <u>Anza</u> to McClure's underlying claim as it was brought in 2005, and the United

26   States Supreme Court decided <u>Anza</u> in 2006.  While it is likely that Arizona would have

27   applied the <u>Anza</u> standard, this issue has not yet been addressed by Arizona courts.  Even if

28   the <u>Anza</u> standard applies, the outcome may be different in the bidding context.  The Ninth

1    Circuit cases applying <u>Anza</u> did not involve an auction and may differ from the situation
2    here, in which the IFB process affects other bidders who are competing for the contract. The
3    general market forces may not be present in a blind and/or closed bidding process from
4    which the City would select a winner. Although GICA argues that the Seventh Circuit's
5    decision on the bidding context is persuasive, neither the Seventh or Ninth Circuit would be
6    binding on an Arizona court interpreting Arizona RICO.

7        Furthermore, the underlying claims resulted in a settlement, and it is unclear at what
8    stage the parties settled.[4] Presumably, the underlying claim was not litigated on the merits.
9    McClure asserts that it suffered direct harm from the alleged fraud because Statewide would
10   have been disqualified from the bid (Dkt. 89, p.10). The underlying RICO claim had close
11   questions of law and fact so that this Court cannot as a matter of law determine how a
12   reasonable judge should have interpreted the Arizona RICO act or what a reasonable jury
13   should have done. Moreover, "the jury in the malpractice case should decide the disputed
14   factual issues pertaining to the original suit." <u>Phillips</u>, 152 Ariz. at 421, 733 P.2d at 306.
15   Therefore, summary judgement as to McClure's underlying RICO claim cannot be granted.

16   ## B.    Causation for Legal Malpractice

17       With regards to the overarching legal malpractice claim, GICA asserts "[t]here is a
18   total absence of evidence of causation to support the legal malpractice case" (Dkt. 76, p.10).
19   GICA claims that McClure's expert, Larry J. Cohen, concluded that Downey breached the
20   standard of care, but Cohen "wholly declined to express an opinion on causation" (<u>Id.</u>).
21   Furthermore, "McClure has not disclosed any other expert opinion on the issue of legal
22   malpractice, nor offered any evidence proving that Downey's actions and omissions
23   proximately caused the diminution of a purported multimillion claim" (<u>Id.</u>). GICA also
24   alleges that "even when an attorney concedes negligence, there must still be sufficient proof
25   that the defendant's conduct was the actual and proximate cause of injury" (Dkt. 92, p.9).

26

27       [4] Although there was a change in law, it is unclear whether the change of law would
28   have undercut McClure's claims in the underlying case.

1    McClure counters that to establish causation for legal malpractice, it must only present

2  "probable facts from which negligence and causal relations may reasonably be inferred"

3  (Dkt. 89, p.11) (citing Cecala, 532 F. Supp. 2d at 1137).  McClure contends that its evidence

4  simply must allow a fair-minded juror to reasonably infer that, but for Downey's negligence,

5  McClure would have prevailed at trial (Id.).  McClure also makes arguments regarding duty

6  that are unrelated to causation.

7    GICA is mistaken that McClure must produce expert testimony on *causation*.

8  "Although expert testimony is generally required to establish the *standard of care* in a

9  professional malpractice action, it is not necessary where the negligence is so grossly

10 apparent that a lay person would have no difficulty recognizing it."  Asphalt Engineers, Inc.

11 v. Galusha, 160 Ariz. 134, 135-36, 770 P.2d 1180, 1181-82 (Ct. App. 1989) (emphasis

12 added).  Furthermore, "expert testimony is also not required where an accused attorney

13 acknowledges that the alleged conduct constitutes malpractice." Id. at 136, 770 P.2d at 1182.

14 In Arizona, expert testimony may be required to establish the *standard of care* and deviation

15 from that standard, but it is not required to show *causation* of a resulting injury.  See Baird

16 v. Pace, 156 Ariz. 418, 420, 752 P.2d 507, 509 (Ct. App. 1987).  In Baird, the Arizona Court

17 of Appeals first addressed whether plaintiff had established the standard of care and breach

18 of that standard through expert testimony.  Id.  Although both parties presented conflicting

19 expert opinions, the court found that the expert testimony presented, subject to the fact

20 finder's assessment, was a proper basis for the fact finder's findings.  Id.  After determining

21 that plaintiff had established the standard and breach of it, then the court addressed

22 defendant's argument that even if he was negligent, that such negligence was not the

23 proximate cause of plaintiff's injury.  Id. at 422, 752 P.2d at 511.  Moreover, in Asphalt

24 Engineers, the issue was whether "the trial court committed reversible error by submitting

25 the issues of breach of contract and negligence to the jury in the absence of expert testimony

26 that [the attorney] had deviated from the standard of care for an attorney." 160 Ariz. at 135,

27 770 P.2d at 1181. Ultimately, the Arizona Court of Appeals held that the trial court properly

28 submitted the issues to the jury.  Id. at 136, 770 P.2d at 1182.  These cases illustrate that

1   causation is an element separate from duty and breach, and expert testimony is not required

2   for causation.  After a plaintiff first establishes duty and breach, often through expert

3   testimony in a professional negligence action, a court may then submit the action to the jury

4   to determine factual issues and the remaining elements.

5        In order to reach a jury on causation issues, a plaintiff must show that there is "some

6   reasonable connection between the act or omission of the defendant and the damage which

7   the plaintiff has suffered."[5]  See Purcell v. Zimbelman, 18 Ariz. App. 75, 82, 500 P.2d 335,

8   342 (1972); see also Tennen v. Lane, 149 Ariz. 94, 96-97, 716 P.2d 1031, 1033-34 (Ct. App.

9   1985).  As noted above, McClure must show actual cause in an attorney malpractice claim:

10  but for Downey's negligence, it would have succeeded in the original suit.  Phillips, 152

11  Ariz. at 418, 733 P.2d at 303.  If there is any evidence which would permit reasonable jurors

12  to make such a finding, then causation becomes a jury question.  Hyatt Regency Phoenix

13  Hotel Co. v. Winston & Strawn, 184 Ariz. 120, 131, 907 P.2d 506, 517 (Ct. App. 1995)

14  (citing Tennen, 149 Ariz. at 97, 716 P.2d at 1034).  In attorney negligence cases, "[t]he

15  general rule is that the question of causation is one of fact for a jury except in those instances

16  where no reasonable persons could disagree."  Molever v. Roush, 152 Ariz. 367, 374, 732

17  P.2d 1105, 1112 (Ariz. App. 1986) (citations omitted).  On the other hand, when the

18  consequences of an attorney's negligence bear upon a legal ruling by the court, the causation

19  question is one of law.  Id.  Here, causation is not a question of law because Downey's

20  negligence did not bear upon a legal ruling by the court in the underlying claim.  See id.

21  Rather, the underlying claim resulted in settlement allegedly as a result of Downey's

22  negligent advice; therefore, "[t]he question what outcome should have followed if defendants

23  had conducted a proper investigation . . . or other steps bearing on a decision based on facts

24  remains a question of fact for the jury."  See Phillips, 152 Ariz. at 422, 733 P.2d at 307.

25

26       [5] Some of the opinion's cited here appear to conflate actual and proximate cause or
    discuss them as one element, however, the reasoning in the opinions applies to actual
27  cause.  For consistency, the Court continues to discuss actual cause as an element
    separate from proximate cause.
28

1   Although expert testimony on the standard of care and breach of it may not have been

2   required because Downey acknowledged that his alleged conduct constituted malpractice,

3   McClure presented the expert opinion of Larry Cohen on Downey's duty and breach.  See

4   Asphalt Engineers, 160 Ariz. at 136, 770 P.2d at 1182.  At issue is whether Downey's

5   negligent actions actually caused damage to McClure.  McClure has presented evidence on

6   causation, such as Downey's affidavit stating that "[b]ecause I did not take the necessary

7   steps to advance my client's best interests, I was not able to make a full and fair demand on

8   the defendants to settle the case, nor was I able to properly respond to settlement offers made

9   by the defendants" (Downey Affidavit, ¶ 19).  Downey further states that he settled the case

10  for an amount well below its value.  (Id. at ¶ 20).  On the other hand, GICA alleges that

11  Downey made these admissions to escape personal liability (Dkt. 92, p.9).  The parties

12  dispute the motive behind Downey's admissions, as well as whether Downey's negligence

13  caused damage to McClure, which are genuine issues as to material fact.  While Downey

14  may have admitted that his shortcomings caused damage to McClure, McClure must still

15  prove that but for Downey's negligence, it would have succeeded in the original suit.  See

16  Phillips, 152 Ariz. at 418, 733 P.2d at 303.  McClure has introduced evidence giving a jury

17  a reasonable basis to find that Downey caused it injury.  Therefore, the causation question

18  remains one of fact for the jury.

19      **C.    Evidence of Damages**

20      GICA argues that McClure has offered no competent evidence that it was damaged.

21  GICA concedes that its argument here is contingent on its separate motion to exclude

22  McClure's expert, John Gorman.  The Court denied GICA's Motion to Exclude Plaintiff's

23  Expert Witness on Damages (Dkt. 94, Order dated June 4, 2008).  Therefore, GICA's

24  argument regarding evidence of damages fails.

25      Summary judgment is appropriate for McClure's underlying claims of fraud and

26  negligence.  However, the Court cannot grant the remainder of GICA's motion for summary

27  judgment because there are genuine disputes as to material facts.  Therefore, the Court will

28  grant in part and deny in part GICA's motion for summary judgment.

1
2

III.  **McClure Enterprises' Second Motion for Partial Summary Judgment Re: Professional Negligence of William J. Downey**

3      McClure asserts that all of these issues are uncontested: 1) Downey represented

4   McClure in the underlying claim, 2) Downey owed duties of skill and loyalty to McClure, 3)

5   3) Downey breached those duties, and 4) Downey's breach of those duties proximately

6   caused injury to McClure (Dkt. 80, p.8).  McClure concedes that there is a genuine dispute

7   over the amount of damages, but nonetheless asserts that there is no dispute that damages

8   were caused (Id.).  McClure claims that its expert and Downey's admission show that there

9   is no contest over these issues (Id. at 4-5).  Therefore, McClure asserts that no genuine

10  dispute of fact or law exists about whether Downey committed malpractice (Id. at 6).

11     Unfortunately for McClure, GICA contests several of the issues, particularly whether

12  McClure would have prevailed on the "case within the case," which is required to establish

13  actual cause (Dkt. 88, p.2-3).  As noted above, the Court has ruled that there is a genuine

14  dispute as to material facts relating to causation for the attorney negligence claim.  Therefore,

15  the Court will deny McClure's partial motion for summary judgment.

16     While arguing Downey's negligence, McClure also raises Downey's alleged breach

17  of a fiduciary duty of loyalty.  McClure alleges that Downey repeatedly borrowed money

18  from McClure without advising McClure to seek the advice of outside counsel, which is a

19  violation of Ethical Rule 1.8(a) of the Arizona Rules of Professional Conduct and a breach

20  of a fiduciary duty (Dkt. 80, p.7).  "Rules of professional conduct may provide evidence of

21  how a professional would act;" therefore, McClure argues that Downey's fiduciary duty

22  breach should serve as evidence of Downey's negligence in the underlying claim.  See

23  Stanley v. McCarver, 208 Ariz. 219, 225 n.6, 92 P.3d 849, 855 n.6 (2004).  McClure

24  concedes that a fiduciary duty breach and ethical violation do not establish negligence, but

25  McClure argues that they serve as proof of Downey's motive to settle in the underlying

26  claim.

27     "The duties of care and loyalty, though coextensive, create two independent bases of

28  tort liability in Arizona."  Cecala, 532 F. Supp. 2d at 1133.  McClure's Complaint does not

contain allegations of a breach of a fiduciary duty of loyalty. Although McClure's Complaint makes one statement that Downey owed McClure "the obligation of loyalty" (Dkt. 1, Ex. 5, ¶ 12), McClure's allegations only concern attorney negligence. As McClure did not bring a claim for fiduciary duty breach, the Court cautions that McClure cannot bring a breach of fiduciary duty claim under its negligence claim because they are independent bases of tort liability. See Cecala, 532 F. Supp. 2d at 1133.

Because the Court's ruling on causation determines this summary judgment, the Court has intentionally not addressed all of the parties' arguments.

## CONCLUSION

In the underlying case, McClure did not sufficiently allege claims of fraud and negligence so that those claims should have failed as a matter of law. However, McClure may have sufficiently alleged claims of intentional interference with a business expectancy, conspiracy, and RICO; therefore, those claims may not have failed as a matter of law. Moreover, the Court finds that there are genuine disputes of material facts about causation both for the surviving underlying claims and for the attorney negligence claim.

Therefore, in light of the reasons set forth above,

**IT IS HEREBY ORDERED** that McClure's Second Motion for Partial Summary Judgment Re: Professional Negligence of William J. Downey (Dkt. 80) is **DENIED**.

**IT IS FURTHER ORDERED** that GICA's Motion for Summary Judgment on Plaintiff's Complaint (Dkt. 76) is **GRANTED** in part with regards to McClure's underlying claims of fraud and negligence and **DENIED** as to the rest.

**IT IS FURTHERED ORDERED** setting a status conference before the Honorable Stephen M. McNamee for **February 9, 2009 at 1:30p.m.** in Courtroom 605, 401 West Washington Street, Phoenix, Arizona 85003.

DATED this 8th day of January, 2009.

Stephen M. McNamee
United States District Judge